IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| OLLIE GODWIN, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| V. ) | CASE NO: 2:05-cv-00783-SRW |
| ) | |
| NATIONAL UNION FIRE INSURANCE ) | From Circuit Court of Crenshaw Co. |
| COMPANY OF PITTSBURGH, INC., ) | Case No: CV05-69 |
| ET AL., ) | |
| ) | ORAL ARGUMENT REQUESTED |
| DEFENDANTS. ) | |
| ) | |

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT and MOTION TO STRIKE**

COMES NOW the Defendant, National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "NUFIC")[1], and hereby replies to Plaintiff's Response to NUFIC's Motion for Summary Judgment as follows:

**2003 Injury Claim**

In Mr. Godwin's "Statement of Disputed Facts" regarding his 2003 claim, Mr. Godwin states only one material fact that is actually contrary to the facts set forth in NUFIC's Statement of Facts. *For the first time,* Godwin asserts a new fact to attempt to bring himself within the definition of "Under Dispatch" – that he was in fact "en route" to deliver a load

---

[1] As stated in the Motion for Summary Judgment, the plaintiff incorrectly named the defendant in its complaint as "AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc." The entities issuing policies relative to this suit were AIG Life Insurance Company (not "AIG") and National Union Fire Insurance Company of Pittsburgh, PA. Thus, "AIG" had no role in the events made the basis of his suit and is not a proper party in this suit. Further, service was not perfected or even attempted on "AIG" as the plaintiff merely served this defendant, NUFIC, via registered agent pursuant to ALA. CODE ' 10-2B-15.10 and ALA. R. CIV. P. 4(c)(6). There was no service on "AIG." Without service, the lower court from which this case was removed never obtained personal jurisdiction over "AIG." ALA. R. CIV. P. 4.2. Thus, no judgment should be entered against "AIG." For the purposes of the Motion for Summary Judgment and this Reply, NUFIC responds for both AIG Life and NUFIC.

when he went home to repair the truck. However, this "fact" is supported only by Mr. Godwin's affidavit of October 26, 2006, which is in direct opposition to his testimony through deposition taken on July 10, 2006.

In his deposition, Mr. Godwin stated he had not made any deliveries on November 22, 2003:

> Q. Where were you working on the muffler?
> A. At home, my shop.
> ***Q. You stated earlier that this happened around 11:00 a.m.; is that correct?***
> A. Yes.
> ***Q. Had you made any deliveries that day?***
> A. No. It's been a while back. I don't believe so. Seemed like the truck was loaded with pea gravel when the pipe blowed out. You have to fix it because DOT will shut the truck down if they catch you because of exhaust going to the cab of the truck with the driver.
> Q. When had the pipe broke?
> A. Bringing it in, you know, fixing to take a load to haul it. We was taking a load off. He brought it in to the house because the pipe was busted.
> Q. Who brought it into the house?
> A. I forgot who was driving for me then. I can check on it.
> Q. This was not the truck you were driving at that time?
> A. Not right there at the time, it wasn't. But I was going to take it off.
> Q. So would this have been Clyde or Mark who was driving the truck?
> A. No, wouldn't be one of those.
> Q. But it was another person with whom you had contracted to drive one of your trucks; is that correct?
> A. Yeah. It was my truck.
> ***Q. When the pipe burst, you were not driving the truck; is that correct?***
> A. No.

(Deposition of Ollie Godwin, Exhibit 1 of Motion for Summary Judgment, pp. 76:20-23; 77:1-23 and 78:1-9) (emphasis added). Mr. Godwin's above-quoted deposition testimony indicates that Mr. Godwin was not under dispatch as defined in the Policy at the time the muffler fell on him. Mr. Godwin's testimony is in line with the information provided by Godwin Material and

Mr. Godwin to AIG Life. Mr. Godwin never indicated he was en route to make a delivery at the time of his accident. Only in this self-serving affidavit, filed in hopes of precluding summary judgment, has Mr. Godwin asserted that he was actually en route to make a delivery at the time of the accident.

An unsupported assertion by the non-movant is not sufficient to defeat a motion for summary judgment. "Plaintiff has furnished no evidence other than his own self-serving affidavit in support of his allegations. Because Plaintiff's opposition consists of conclusory allegations and lacks evidentiary support, the Court 'must enter summary judgment in the moving party's favor.'" Huguley v. Winters, 1998 U.S. Dist. LEXIS 14093, *8 (S.D. Ala. 1998) (internal citation omitted). Additionally, it should be noted that the plaintiff's affidavit is not even in proper form as, on its face, it states that the notary's commission was expired. Thus, it is mere hearsay.

Even if Mr. Godwin had made deliveries on November 22, 2003, prior to the time of this accident, he never provided any information to AIG Life that he was en route, and therefore under dispatch, at the time of the alleged injury. The information provided on the Policyholder Loss Information Report signed by Ms. Cindy Jordan indicated the vehicle was not loaded at the time of the accident and the driver was not under dispatch. Ms. Jordan believes she received this information from Mr. Godwin:

> *Q.     Would you look for information in a file or somewhere to be able to fill out this form?*
> MS. CRUNK: Object to the form.
> BY MS. RICHARDSON:
> Q.     I mean, how is the information on there? It says: Was the vehicle loaded?
> *A.     Okay. That, I would guess, that I got that information from Ollie [Mr. Godwin].*

(Deposition of Cindy Jordan, Plaintiff's Exhibit 11 to Plaintiff's Response to Defendants'

Motion for Summary Judgment, p. 18:12-20) (emphasis added).  Further, the letter sent on his behalf by Mr. Jerry Godwin does not indicate he was en route to make a delivery at the time of his accident.  (Exhibit D of Exhibit 2 of Motion for Summary Judgment.)  As discussed in the Motion for Summary Judgment, Mr. Godwin was sent additional forms to complete regarding his hernia, including the previously un-reported injury in October 2003, yet Mr. Godwin never provided any information to indicate he was en route to make a delivery at the time of his injury.  That Mr. Godwin now chooses to change his story with an unsupported, self-serving assertion cannot subject the insurer to bad faith claims or even defeat summary judgment as to the breach of contract claims.

In order to prevail on a bad faith claim, as stated in the Motion for Summary Judgment, Mr. Godwin must show 1) an insurance contract between the parties and a breach thereof by AIG Life or NUFIC; 2) an intentional refusal to pay Mr. Godwin's claim; 3) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); 4) AIG Life or NUFIC's actual knowledge of the absence of any legitimate or arguable reason; and 5) if the intentional failure to determine the existence of a lawful basis is relied upon, Mr. Godwin must prove AIG Life or NUFIC's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.  See State Farm Fire and Cas. Co. v. Slade, 747 So. 2d 293, 304 (Ala. 1999) quoting Nat'l Sec. Fire and Cas. Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982).  Requirements 1) through 4) represent the "normal" case; requirement 5) represents the "abnormal" case.  Slade, 747 So. 2d at 306.

Mr. Godwin cannot prove the elements necessary for a "normal" bad faith claim even with the information he alleges in his affidavit, because this new assertion that he was en route was not made until twelve days ago.  Therefore, AIG Life had a legitimate or arguable reason

4

to refuse to pay Mr. Godwin's claim as an Occupational Injury – namely that the information provided to it prior to the denial of the claim showed Mr. Godwin was not under dispatch. Thus, AIG Life was entitled to debate that issue. ("When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." National Security Fire & Cas. Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982) quoting Gulf Atlantic Life Ins. Co. v. Barnes, 405 So. 2d 916 (Ala. 1981). Moreover, even now, NUFIC is entitled to debate the issue as Mr. Godwin has provided inconsistent testimony regarding whether or not he was under dispatch.

Mr. Godwin cannot maintain a failure-to-investigate, or "abnormal," bad faith claim either. The email from Ms. Adger to Ms. Gambino[2] and the Commission Report[3] on which Mr. Godwin chooses to rely as evidence of AIG Life's bad faith does not indicate that Mr. Godwin was "en route to pick up a load, picking up a load, en route to deliver a load, and unloading a load." In fact, the information provided to AIG Life indicates Mr. Godwin was not under dispatch at the time of the injury on that Saturday. Alabama has rejected the proposition that an insurer has a duty to do more than review the documents that the insured submits to it. See United Ins. Co. of America v. Cope, 630 So. 2d 407, 412 (Ala. 1993). Thus, an abnormal bad faith claim must fail as well.

Furthermore, Mr. Godwin's reply as to his 2003 injury misconstrues the hernia coverage rider:

> Any reference to an injury or accident as defined in the policy is hereby deemed to include Hernia. Benefits shall be payable for a Covered Loss **caused** in whole or in part **by**, **contributed to** in whole or in part by, **or resulting** in whole or in part **from**, **the** Insured's Person's **Hernia,** provided such Hernia is

---

[2] Plaintiff's Exhibit 19 is not email correspondence as it is noted to be in Plaintiff's Exhibit List. Additionally, it should be stricken as hearsay and not authenticated. See the Motion to Strike, *infra*.

[3] The Commission Report is inadmissible hearsay as it is not authenticated or otherwise placed in admissible form. See the Motion to Strike, *infra*.

5

surgically repaired while the Insured Person's coverage is in force under this Policy. (emphasis added).

(Hernia Coverage Rider, Plaintiff's Exhibit 10 to Plaintiff's Response to Defendants' Motion for Summary Judgment, ¶ 3). Mr. Godwin argues that "the prior [October 2003] incident is covered by the language contained in the Hernia Rider if it partially contributed to the hernia." However, such an interpretation is skewed. The rider references additional losses <u>caused by</u> a hernia, not injuries <u>causing</u> a hernia. The "in whole or in part" language of the Hernia Rider refers to a Covered Loss, not an Injury. The Rider provides that a Covered Loss <u>caused</u> in whole or in part by a hernia will be covered, not that multiple incidents can be combined to make a compensable Injury. Injury is still defined in the Policy as set forth below:

> **Injury** means bodily injury to an Insured Person caused by an Occupational accident while coverage is in force under this Policy, which ***results directly from and independently of all other causes*** in a Covered Loss. All Injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

As stated in the Motion for Summary Judgment, Mr. Godwin cannot claim the unreported October 2003 Injury occurring while under dispatch can combine with the November 2003 incident to make an Injury. Additionally, he provides no evidence, let alone substantial evidence, that the hernia was caused by the October 2003 injury.

### 2004 Injury Claim

Mr. Godwin completely misstated the law regarding "directly and independently" in his Reply. The first case cited by Mr. Godwin, <u>Dixon v. Life Ins. Co. of N. America</u>, 389 F.3d 1179 (11th Cir. 2004), is inapposite. The <u>Dixon</u> case dealt with an ERISA plan and the "substantially contributed" test set forth in that case is ***federal common law***, not Alabama law as governs in this case.

The second case cited by Mr. Godwin, <u>City of Fort Payne v. Barton</u>, 621 So. 2d 993,

995-996 (Ala. Civ. App. 1993), is a worker's compensation case. Additionally, due to the fact that the worker sustained injury in 1990, the case was decided pursuant to the workers' compensation laws prior to the complete overhauling of the workers' compensation statute in 1992. This case is no longer applicable in workers' compensation cases, and it concerns an entirely different area of law than that at issue in this case. Worker's compensation is an entirely separate body of law established with a default of recovery for an employee and consisting of different parameters for recovery. ALA. CODE 25-5-51 (1975 as amended).

The third case, Liberty Nat'l Life Ins. Co. v. Bailey, 34 Ala. App. 199, 202-203 (Ala. Ct. App. 1949), is misquoted entirely. The quote used by Mr. Godwin is actually from a case cited in Bailey and then distinguished from Bailey. The portion of the opinion quoted by Mr. Godwin (identified in italics) in context appears as follows:

> The pertinent portion of the provisions of the policy is:
>
> "Upon receipt of due proof that the death of the Insured resulted, directly and independently of all other causes, from bodily injuries caused solely by external, violent and accidental means * * * the Company will pay 'Extra Benefit for Death by Accident' which shall be an amount equal to the 'face amount' of this policy as shown in the schedule above * * * the additional benefit shall not be payable if the insured's death (a) is caused or contributed to by disease or infirmity." (Emphasis ours.) [Emphasis removed.]
>
> Apparently some confusion has arisen among the authorities because of the different provisions or clauses in policies carrying coverage for accidental death. This is pointed out in Standard Accident Ins. Co. of Detroit v. Hoehn, 215 Ala. 109, 110 So. 7, and Benefit Ass'n of Ry. Employees v. Armbruster, supra. In these two cases neither of the policies under review contained the provision which we have italicized supra. This was noted in both opinions, and a distinguishing interpretation was declared.
>
> In the Hoehn case, just supra, Justice Sayre, writing for the court, incorporated in his opinion a quotation from Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S.W. 995, 44 L.R.A.,N.S., 493. In this excerpt is to be found almost a verbatim statement of the portion of the court's oral charge which we are now considering in the case at bar.

In connection with the approval of the assertion Justice Sayre observed [215 Ala. 109, 110 So. 9]:

"In some of the cases denying recovery on facts of the same general character as those here involved the policies contained a stipulation that the insurance thereby provided did not cover 'any death which resulted wholly or in part directly or indirectly from disease or bodily infirmity,' and it may be conceded that, had the policy here in suit contained a clear and unlimited stipulation to that effect, there could be no recovery."

In First National Bank of Birmingham v. Equitable Life Assur. Soc. of United States, 225 Ala. 586, 144 So. 451, the Supreme Court had under review a policy which contained a provision "or [from] death resulting directly or indirectly from bodily or mental infirmity". Justice Bouldin, with considerable care in analyses and citations of authorities, demonstrated the distinguishing lines of demarcation between liabilities on policies which contain accidental coverage defined in general terms and those which have the added limitations and provisions such as are included in the policy now before us. He observed:

*"In dealing with accident policies whose coverage is defined by the general terms, such as death resulting directly and solely from the accidental injury, exclusive or independent of all other causes, this court has approved and adopted the rule announced by other courts to the following effect: '* * * Where accidental injury aggravated a disease and hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident, it is the direct, independent, and exclusive cause of death at the time.' * * *"*

*"This view of proximate cause is applied in our cases, notwithstanding the grave condition of the disease, and notwithstanding the accidental injury was such as not to be fatal but for the disease or bodily infirmity. * * *"*

Id. However, the court went on as follows, reaching a very different conclusion:

"If the present policy contained only the general clause defining the coverage or liability assumed by the insurer, without question the facts make a case of liability under our cases, supra."

**It follows that the above quoted provision of the policy of instant concern has the following application and meaning: If the insured was afflicted at the time of the accident with a disease or physical infirmity and the accidental injury contributed or cooperated with the malady to produce death, a liability would <u>not</u> arise under the contract. On the other hand, if the accidental injury, independently and exclusively of the infirmity, proximately caused death, a recovery under the policy should be allowed.**

Id. (emphasis added). As can be seen above, when the quote selected by the plaintiff is placed

8

in context in the case from which it was cited, it is obvious that the case stands for a completely different proposition. When a policy contains exclusionary language such as the Policy at issue here, that language should be accorded significance such that "If the insured was afflicted at the time of the accident with a disease or physical infirmity and the accidental injury contributed or cooperated with the malady to produce death, a liability would not arise under the contract." Bailey. The pertinent exclusionary language to be applied to the 2004 claim is as follows:

> **Injury** means bodily Injury to an Insured Person caused by an Occupational accident while coverage is in force under this Policy, which *results directly and independently of all other causes in a Covered Loss*. All Injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

and

> **SECTION VI        EXCLUSIONS**
>
> This Policy does *not* cover any losses caused in whole or in part by, or resulting in whole or in part from the following:
>
> * * *
>
> 2.    *sickness, disease* or infections of any kind, except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning;

Further, the other two cases, Union Central Life Ins. Co. v. Scott, 236 So. 2d 328 (Ala. 1970) and Tate v. Governmental Employees Ins. Co., 997 F.2d 1433 (11th Cir. 1993), cited by Mr. Godwin are of no import. First, the Tate court's focus was on the definition of "accident" and its discussion of disease exclusions is essentially limited to quoting Scott. Second, the Scott court acknowledged that "if the disease, in cooperation with the accidental injury, is an efficient cause of death, then there can be no recovery for accidental death." Id. at 330. Finally, the portion of the opinion quoted by Mr. Godwin is again inapposite. In the present matter we are not dealing with "some disease [that] may have contributed to some extent to the

insured's death." Id. at 331. Mr. Godwin's circumstances are different. As sworn by Dr. Michael, "it is [his] opinion that there is no relationship between the alleged October 2004 accident and the onset and subsequent problems Mr. Godwin had in both hips from the avascular necrosis of the femoral heads." (Exhibit 5, ¶6 of Motion for Summary Judgment) Mr. Godwin can offer no admissible evidence otherwise.

Also, Mr. Godwin's interpretation of the Black-Gammons case is misleading. Mr. Godwin states "Black-Gammons 'did not argue that her degenerative disk disease was precipitated by the accident.'" (Plaintiff's Reponse to Defendant's Motion for Summary Judgment, p.12) However this misquotes the court's opinion. Rather, the court was pointing out the lack of evidence Black-Gammons provided to the court. The quote (identified in italics) in context is as follows:

> **Black-Gammons has presented no medical evidence whatsoever that the herniated discs which form the only basis of her claim are solely and directly related to her accident, as opposed to stemming from the degenerative-disc disease with which she has been diagnosed. The only relevant evidence before the court supporting Black-Gammons's claim is her own affidavit stating that she was able to work before the accident, but not afterwards.**
> The court has no reason to doubt that this is true, but it does not automatically entitle Black-Gammons to benefits under the Zurich America policy. Black-Gammons has *not argued that her degenerative disease was in some way precipitated by the accident*. She has not argued, alternatively, that the injuries she sustained during the accident are solely responsible for her herniated discs, independent of the degenerative disc disease.

Black-Gammons v. Zurich Am. Ins. Co., 2006 U.S. Dist. LEXIS 1942, *10-11 (M.D. Ala. 2006) (emphasis added). Much like Black-Gammons, Mr. Godwin states in his affidavit that he worked before the accident, but later had to seek medical treatment. Mr. Godwin offers no medical evidence that his hip surgery is directly and independently resulting from his accident and does not instead stem from the avascular necrosis. Such lack of evidence was not good

enough for the court in Black-Gammons and should not be good enough for the Court in this case.

Because the evidence is such that breach of contract cannot be proved, and as discussed in the Motion for Summary Judgment, bad faith cannot be maintained with regard to the claims, NUFIC is entitled to judgment as a matter of law for both breach of contract and bad faith.

## CONCLUSION

NUFIC and AIG Life did not breach the insurance contract with Mr. Godwin concerning the November 2003 injury, the claim which was rightfully denied as the plaintiff was not "under dispatch" at the time the muffler fell on him, allegedly resulting in a hernia. While the evidence indicates that the truck upon which he was working may have been under dispatch. The policy requires the insured to have been under dispatch at the time injury was sustained. The only evidence provided by the plaintiff that he was under dispatch at the time of the injury in November 2003 is his unsupported affidavit submitted with the plaintiff's response brief. Furthermore, the affidavit conflicts with his deposition testimony taken in July 2006 as well as all other documentation submitted by him and Godwin Materials thus far. This unsupported assertion is not substantial evidence sufficient to defeat a motion for summary judgment.

The alleged October 2003 injury was similarly denied correctly even though the plaintiff was under dispatch at the time. The plaintiff continued working and did not seek medical treatment until after the November 2003 injury. The plaintiff attempts to interpret the policy to construe coverage by arguing that the October and November 2003 injuries combined and concurred to result in a hernia. However, the plain language of the hernia rider contained

11

in the Policy indicates that the Policy will cover losses that result from a covered hernia even though the loss combines with other causes. However, there is no language that states that injuries can combine to create a covered hernia. The policy is clear that multiple incidents cannot combine to result in a covered loss.

Regarding the 2004 claim, the plaintiff has failed to provide any substantial evidence that the plaintiff's disease, avascular necrosis, which resulted in a hip replacement, is covered under the Policy. Thus, NUFIC and AIG Life did not breach the contract with respect to the October 2003, November 2003 or the 2004 injuries or diseases. Additionally, the plaintiff's claims for bad faith must fail even if the court were to find there was a breach of contract, as there were debatable reasons for denial of all three incidents, and an insurance company is entitled to debate such reasons.

**WHEREFORE, PREMISES CONSIDERED**, NUFIC, respectfully requests the court to enter summary judgment in its favor as to all claims in this case and to make same final as there is no just reason for delay.

## MOTION TO STRIKE

**COMES NOW** the Defendant, NUFIC, and hereby moves the Court to strike from the record several exhibits filed by the plaintiff on or about October 27, 2006, in support of the Plaintiff's Response to Defendant's Motion for Summary Judgment, and as grounds therefore states as follows:

1. The following exhibits submitted by the plaintiff should be stricken as they are hearsay, unauthenticated and not placed in proper evidentiary form as would be admissible. Thus, such exhibits should be stricken and not considered by the court in ruling upon the

Defendant's Motion for Summary Judgment.

| Exhibit No. | Description |
|---|---|
| No. 2 | Commission Report of Ollie Godwin 10/22/03 |
| No. 3 | Stabler Hospital Record 12/29/03 |
| No. 4 | Report of Dr. Danny Hood 12/04/03 |
| No. 5 | Commission Report of Ollie Godwin 11/22/03 |
| No. 8 | Faxed Proof of Loss Claim Form 12/10/03 |
| No. 13 | Explanation of Benefits Forms paying claims for 10/27/04 accident |
| No. 14 | Medical Notes; Dr. Barrington 12/03/04 |
| No. 15 | Letter from Dr. Barrington to AIG 3/2/05 |
| No. 18 | Commission Report of Ollie Godwin 10/27/04 |
| No. 19 | E-Mail Correspondence |
| No. 21 | Explanation of Benefits Forms Unpaid Claims |

**WHEREFORE,** as such exhibits were not placed in proper evidentiary form, are hearsay and should not be considered by the court in ruling upon Defendant's Motion for Summary Judgment, NUFIC respectfully moves the court to strike these documents from the record.

Respectfully submitted,

/s/ Michelle L. Crunk_____
John W. Dodson            (DOD012)
Michelle L .Crunk          (CRU017)
*Attorneys for AIG d/b/a National Union Fire Insurance Company of Pittsburgh, Inc*

OF COUNSEL:
**FERGUSON, FROST & DODSON, LLP**
2500 Acton Road, Suite 200
Birmingham, Alabama 35243
(205) 879-8722  PHONE
(205) 879-8831  FACSIMILE

### CERTIFICATE OF SERVICE

      This is to certify that on this the 7th day of November, a copy of the forgoing document has been served upon counsel for all parties to this proceeding via EMC/CF e-filing:

Arlene M. Richardson
RICHARDSON LEGAL CENTER, LLC
Post Office Box 971
Hayneville, Alabama  36040-0971

                                      /s/ Michelle L. Crunk_____
                                      OF COUNSEL

138898